UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PEDRO QUIROZ,

                           Petitioner,                     15-cv-6828 (PKC)
                                                             14-cr-765-1 (PKC)

             -against-                        MEMORANDUM
                                                            <u>AND ORDER</u>

UNITED STATES OF AMERICA,

                           Respondent.
------------------------------------------------------------x
------------------------------------------------------------x
LUIS HORRACH,

                           Petitioner,                     15-cv-6833 (PKC)
                                                             14-cr-765-2 (PKC)

             -against-

UNITED STATES OF AMERICA,

                           Respondent.
------------------------------------------------------------x
CASTEL, U.S.D.J.

            Petitioners Luis Horrach and Pedro Quiroz, proceeding <u>pro se</u>, each filed a

petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition").

(14 cr 765 (PKC), Dkt. No. 87, 88.)  Petitioners raise identical claims, arguing that they were

each deprived of effective assistance of counsel guaranteed by the Sixth Amendment.  For the

following reasons, the Petitions are DENIED.

BACKGROUND

            Petitioners and their codefendants were arrested on August 6, 2014, and charged

by complaint the following day.  (14 cr 765 (PKC), Dkt. No. 1.)  Horrach and Quiroz were each

appointed counsel pursuant to the Criminal Justice Act.  (14 cr 765 (PKC), Dkt. No. 3, 5.)
Petitioners subsequently waived their right to be charged to a grand jury, and an Information was
filed on November 19, 2014.  (14 cr 765 (PKC), Dkt. No. 33.)  The Information charged
petitioners with (1) conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951,
(2) possession of a firearm during and in relation to a crime of violence in violation of 18 U.S.C.
§ 924(c), and (3) conspiracy to distribute and possess with intent to distribute cocaine in
violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  (Id.)

   Prior to the filing of the Information, the government presented each petitioner
with a plea agreement which contemplated a plea to Count One of the proposed Information (the
"Plea Agreement").  Each Plea Agreement stipulated a sentencing range of 70 to 87 months'
imprisonment based on a calculated offense level of 25 and a criminal history category of III.
(Horrach Presentence Report ("Horrach PSR") ¶ 7; Quiroz Presentence Report ("Quiroz PSR) ¶
8.)  The offense level of 25 was grounded on a base offense level of 20 pursuant to § 2B3.1(a) of
the United States Sentencing Guidelines (the "Guidelines"), with a six-level enhancement based
on petitioners' possession of a firearm during the commission of the robbery and because taking
a controlled subject was an object of the offense.  (Id.)  An additional two-point enhancement
was applied based on each petitioner's role as organizer or leader of the conspiracy.  Because
petitioners would be accepting responsibility for their crime, a three-point reduction was
included.  (Id.)

   On November 24, 2014, Horrach pled guilty to Count One of the Information
pursuant to his Plea Agreement.  (Dkt. No. 40 ("Horrach Plea Tr.").)  Prior to allocution, Horrach
indicated that he discussed the charges with his lawyer, that he sufficiently considered his
options, and that he was satisfied with his lawyer's representation.  (Horrach Plea Tr. 6.)  This

Court explained to Horrach the rights that he was giving up as a result of the plea, including the presumption of innocence, the right to an attorney throughout trial, and the right to remain silent and not testify.  (Horrach Plea Tr. 6-8.)  Horrach evinced an understanding of the charges against him, including that he could be sentenced to a maximum term of 20 years' imprisonment.  (Horrach Plea Tr. 9.)  After ensuring that Horrach had a copy of the Plea Agreement in front of him, Horrach affirmed that he had read and understood the Plea Agreement before signing it, that he discussed the terms with his lawyer, and that he knowingly and voluntarily signed it without coercion.  (Horrach Plea Tr. 13.)  Horrach also indicated that he understood that the stipulated guideline range of 70 to 87 months was not binding on the Court.  (Horrach Plea Tr. 15.)  In response to the Court's inquiry of what he did that led him to believe he was guilty of Count One of the Information, Horrach stated that he conspired to rob 40 kilograms of cocaine, and that he knew what he was doing was wrong and unlawful.  (Horrach Plea. Tr. 18.)  His plea of guilty was subsequently accepted by the Court.  (Horrach Plea Tr. 20-21.)

On January 7, 2015, Quiroz pled guilty to Count One of the Information pursuant to his Plea Agreement.  (Dkt. No. 48 ("Quiroz Plea Tr.").)  Like Horrach, Quiroz stated that he discussed the charges in the Information with his lawyer, that he had sufficient time to consider his options, and that he was satisfied with his lawyer's representation.  (Quiroz Plea Tr. 6.)  Quiroz also expressed an understanding of the constitutional rights that he would give up by pleading guilty.  (Quiroz Plea Tr. 4-6.)  Quiroz also indicated that he reviewed his Plea Agreement before signing it, discussed its terms with his attorney, and was not coerced or promised anything for signing it. (Quiroz Plea Tr. 9-11.)  The Court explained that it was not obligated to sentence Quiroz within the stipulated Guideline Range, and that he could be sentenced up to a maximum term of 20 years' imprisonment.  (Quiroz Plea Tr. 7, 10-11.)  In

response to the Court's inquiry of what he did that led him to believe he was guilty of Count One of the Information, Quiroz stated that he and his codefendants "agreed to rob two people we suspected possessed narcotics." (Quiroz Plea Tr. 13.) The Court subsequently accepted Quiroz's guilty plea. (Quiroz Plea Tr. 15.)

The United States Probation Office prepared Horrach's PSR, which calculated his applicable Guidelines range as 70 to 87 months' imprisonment and recommended a sentence of 70 months. (Horrach PSR, at 19.) On March 12, 2015, prior to being sentenced, petitioner indicated that he and his trial counsel "discussed sentencing and . . . [the presentence] report, the recommendation, and the addendum, and the written materials in advance of sentencing." (14 cr. 765 (PKC), Dkt. No. 66 ("Horrach Sentencing Tr."), at 3.) Neither Horrach nor his trial counsel objected to the PSR. (Horrach Sentencing Tr. 3.) The Court sentenced Quiroz to 70 months' imprisonment to be followed by three years of supervised release. (Horrach Sentencing Tr. 14.)

The United States Probation Office prepared Quiroz's PSR, which calculated his applicable Guidelines range as 70 to 87 months' imprisonment and recommended a sentence of 70 months. (Quiroz PSR, at 17.) Quiroz was sentenced on April 15, 2015. (14 cr. 765 (PKC), Dkt. No. 83 ("Quiroz Sentencing Tr.").) At the outset of the sentencing proceeding, Quiroz's trial counsel represented that he had reviewed the PSR with Quiroz and that he did not have any objections. (Quiroz Sentencing Tr. 3.) The Court sentenced petitioner to 70 months' imprisonment to be followed by three years of supervised release. (Quiroz Sentencing Tr. 12.)

DISCUSSION

Petitioners filed their timely petitions on August 24, 2015 asserting that their trial counsels were constitutionally deficient in violation of the Sixth Amendment. Each petitioner contends that his trial counsel was ineffective in three respects. First, petitioners contend that

their trial counsels failed to fully investigate the government's conduct leading to their arrest. An investigation would have, they contend, revealed that the government's investigation was so outrageous that it violated their right to due process.   Second, petitioners contend that their trial counsels were ineffective by allowing them to plead guilty to an offense that the government could not prove.   Third, petitioners contend that their trial counsels failed to provide an informed opinion as to what plea should be entered.   Specifically, petitioners assert that their trial counsels should have objected to two sentencing enhancements that were applied pursuant to the Guidelines.   The Court has considered each petitioner's claims individually and "in the aggregate," Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001), and concludes that trial counsel for each petitioner provided objectively reasonable counsel throughout the pretrial proceedings, plea negotiations, and sentencing.

I.   An Evidentiary Hearing is Not Required

A district court need not conduct an evidentiary hearing before dismissing a § 2255 petition if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255; see also Lake v. United States, 465 F. App'x 33, 34–35 (2d Cir. 2012) ("Although a District Court must hold an evidentiary hearing when presented with any potentially meritorious claim under section 2255, a hearing is not required when, 'viewing the evidentiary proffers . . . and record in the light most favorable to the petitioner,' it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel.'" (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir.2009))).   "It is within the district court's discretion to determine whether a hearing is warranted."   Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003).   Because the Court has the necessary plea and sentencing transcripts, petitioners' PSRs, and other pretrial material at its disposal, the Court concludes that an evidentiary hearing is not required.

II. <u>Ineffective Assistance of Counsel</u>

   To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness" based on prevailing professional norms, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688–90, 694 (1984). To satisfy the first prong, the defendant must overcome a presumption of effective representation and demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687. As for the second prong, it is not enough to show that counsel's errors could have "some conceivable effect" on the outcome. <u>Id.</u> at 693. Rather, the defendant must show "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

  a. First Ground

   Each petitioner contends that his trial counsel's performance was objectively unreasonable by failing to investigate the government's conduct and filing a motion to dismiss the claims against him. (Pet'r Horrach Br. 3-8; Pet'r Quiroz Br. 3-8.) Horrach and Quiroz argue that an investigation would have revealed that the government's conduct was egregious and "shocked the conscious," violating their right to due process under the Fifth Amendment.

   The Second Circuit has held that dismissal of an indictment may be warranted where the government's conduct in investigating the crime is "so excessive that it violates due process." <u>United States v. Al Kassar</u>, 660 F.3d 108, 121 (2d Cir. 2011). The focus of this due process claim is on the conduct of government agents, unlike the entrapment defense, "which focuses on the defendant's predisposition." <u>United States v. Myers</u>, 692 F.2d 823, 836 (2d Cir. 1982). "To establish a due process violation on this ground, a defendant must show that the

government's conduct is 'so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction.'" Al Kassar, 660 F.3d at 121 (quoting United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997)).  Cases warranting reversal on due process grounds "[o]rdinarily . . . must involve either coercion, or violation of the defendant's person." Schmidt, 105 F.3d at 91 (internal citations omitted).  "Absent such extreme misconduct, relief in the form of reversal of a conviction is rare." Id.  Importantly, due process is not violated where the government merely creates "an opportunity for the commission of crime by those willing to do so." Myers, 692 F.2d at 837.  Here, the Court concludes that both Horrach's and Quiroz's trial counsels acted reasonably in not pursuing a dismissal of the Information on due process grounds.  Stripped of legal conclusions, the facts alleged by each petitioner are insufficient to have warranted dismissal of the Information on due process grounds.

While the government provided Horrach and Quiroz an opportunity to commit the crimes to which they ultimately pled guilty, there is no evidence that the government coerced them or their codefendants, or otherwise acted so outrageously to put petitioners' right to due process at risk.  Petitioners allege that the government "created a plan to have an informant contact Mr. Horrach and engage him in a conversation to rob 40 make believe kilograms of cocaine." (Pet'r Horrach Br. 2; Pet'r Quiroz Br. 2.)  However, even if the government initiated the criminal activity at issue, "government creation of the opportunity to commit an offense, even to the point of supplying defendants with materials essential to commit crimes, does not exceed due process limits.'" United States v. Bout, 731 F.3d 233, 238 (2d Cir. 2013) (quoting United States v. Cromitie, 727 F.3d 194, 219 (2d Cir. 2013)); see also Myers, 692 F.2d at 843 ("Due process challenges to an undercover agent's encouragement have been rejected when one defendant was solicited twenty times before committing an offense, and when another defendant

was tempted by a million-dollar cash deal and prodded by veiled threats." (internal citations omitted)).  Nor does the government's involvement in creating the sting operation—such as inventing "the fake drug dealers, the fake 40 kilograms of cocaine, the fake van carrying the fake drug dealers and fake drugs," (Pet'r Horrach Br. 3; Pet'r Quiroz Br. 3.)—violate petitioners' due process rights.  Al Kassar, 660 F.3d at 121 ("It does not suffice to show that the government created the opportunity for the offense, even if the government's ploy is elaborate and the engagement with the defendant is extensive."); Myers, 692 F.2d at 842-43 (2d Cir. 1982) ("[I]f the script was supplied, no one was coerced into playing his part").

Neither petitioner has alleged governmental coercion or an invasion of his person, nor does either petitioner allege facts suggesting their case is one of those rare instances in which the government's conduct otherwise violated his right to due process.  Accordingly, Horrach's and Quiroz's trial counsel acted reasonably by not moving to dismiss the Information based on the government's role in the investigation.

b.  Second Ground

Both petitioners also contend that their respective trial counsel was deficient by allowing them to plead guilty to Count One of the Information.  (Pet'r Br. 10-12.)  Specifically, Horrach and Quiroz argue that Count One required the government to prove that they took or obtained property.  Because the property in question—40 kilograms of cocaine—"never existed," they could not have taken it.  However, Horrach and Quiroz pled guilty to *conspiracy* to commit a Hobbs Act robbery, (Horrach Plea Tr. 20; Quiroz Plea Tr. 14), which only requires the government to prove "the existence of a conspiracy to rob" and "knowing participation in that conspiracy."  United States v. Santos, 449 F.3d 93, 97 (2d Cir. 2006 (citations omitted)).  The fact that petitioners could not complete the conspiracy is not a defense to Hobbs Act conspiracy.  United States v. Clemente, 22 F.3d 477, 480-81 (2d Cir. 1994) ("'Factual

impossibility' is no defense to the inchoate offense of conspiracy under the Hobbs Act."). Therefore, Horrach's and Quiroz's trial counsels were not deficient by allowing them to plead guilty to conspiracy under the Hobbs Act.

    c.  Third Ground

        Lastly, both Horrach and Quiroz contend that their respective trial counsel failed to "properly assess the facts and law related to a firearm enhancement and narcotics enhancement during plea negotiations," and that the "enhancements did not apply to this case." (Pet'r Horrach Br. 13-17; Pet'r Quiroz Br. 13-17.)

        As an initial note, both petitioners knowingly and voluntarily waived their rights to appeal sentences that fell within the agreed upon Guideline range. <u>United States v. Riggi</u>, 649 F.3d 143, 146 (2d Cir.2011) ("Waivers of the right to appeal a sentence are presumptively enforceable."). Petitioners had the opportunity to object to their sentencing enhancements prior to pleading guilty to the offense since the specific sentencing enhancements—and the stipulated Guideline range—were included in their plea agreements. (Horrach PSR ¶ 7; Quiroz PSR ¶ 8.) At their plea proceedings, Horrach and Quiroz stated in open court that they had considered their options thoughtfully, and were satisfied with their attorneys' representation. (Horrach Plea Tr. 6; Quiroz Plea Tr. 6.) Petitioners also indicated that they understood their plea agreements and consulted with their attorneys before signing them. (Horrach Plea Tr. 13, 15; Quiroz Plea Tr. 9-11.) Importantly, the Court inquired whether Horrach and Quiroz understood that by pleading guilty, they waived their right to challenge their sentence if the Court sentenced them at or below the stipulated guideline range, to which they replied that they did. (Horrach Plea Tr. 16; Quiroz Plea Tr. 11-12.) The Court concluded that Horrach and Quiroz knowingly and voluntarily entered into their plea agreements, including their knowing and voluntary waiver of their right to appeal. (Horrach Plea Tr. 21; Quiroz Plea Tr. 15.) Because neither petitioner contends that they

did not understand the waiver contained in their plea agreement, the Court confirms, based on the plea transcripts, that petitioners waived their right to appeal their sentences and underlying sentencing enhancements.  Garcia–Santos v. United States, 273 F.3d 506, 508 (2d Cir.2001) (per curiam) (valid waiver where defendant "signed the plea agreement," told the judge "that he had read and understood the plea agreement," and that defendant "did not claim, in his § 2255 motion, that he had not understood the waiver contained in his plea agreement").

However, the Court notes that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002).  A petitioner's claim that his or her trial counsel was ineffective "survives the guilty plea or the appeal waiver only where the claim concerns the advice [the defendant] received from counsel." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotations omitted).  A meritorious claim of ineffective assistance of counsel based on counsel's advice in the plea process may void an otherwise valid and enforceable appellate waiver.  United States v. Oladimeji, 463 F.3d 152, 155 (2d Cir. 2006); United States v. Monzon, 359 F.3d 110, 119 (2d Cir. 2004).

Here, petitioners contend that their respective trial counsels were ineffective by not advising them during the plea process that the sentencing enhancements did not apply to their case.  However, petitioners' objections to these enhancements have no basis in law or fact, and their counsels acted reasonably by not raising them.  The five-point enhancement for possessing a firearm during the commission of the crime pursuant to the Guidelines § 2B3.1(b)(2)(c) was properly applied, even though petitioners possessed the weapon in the trunk of their car rather than on their persons.  United States v. Herrera, 446 F.3d 283, 285 (2d Cir. 2006) (noting with

approval the district court's application of a two-point enhancement under the Guidelines based on defendant's constructive possession of a weapon).  The Court has reviewed petitioners' remaining objections to the five-point enhancement and finds them without merit.  Horrach's and Quiroz's assertion that their trial counsels should have objected to their one-point enhancement pursuant to the Guidelines § 2B3.1(b)(6) is equally unavailing.  Section 2B3.1(b)(6) only requires that the taking of a controlled substance be "an object of the offense," not—as petitioners contend—that a controlled substance in fact be taken.  Here, there is no doubt that the taking of a controlled subject was an object of the offense—petitioners stated that they conspired to "rob two people we suspected possessed narcotics." (Quiroz Plea Tr. 13; see also Horrach Plea Tr. 18.)  Horrach and Quiroz have failed to overcome the presumption of effective representation.  Accordingly, their knowing and voluntary waivers remain intact.

CONCLUSION

        For the foregoing reasons, Horrach's Petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (14 cr 765 (PKC), Dkt. No. 87) is DENIED.  Quiroz's Petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (14 cr 765 (PKC), Dkt. No. 88) is also DENIED.

        Petitioners have not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163–64 (2d Cir. 2011).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 6, 2016